CHESTER A. LIZAK, Plaintiff-Appellant, *v.* MITCHELL ZADROZNY *et al.*, Defendants-Appellees.

(No. 57058;

First District—April 11, 1972.

Chester A. Lizak, *pro se.*

William R. Ming, Jr., Sophia H. Hall, Andrew M. Raucci, and Edward V. Hanrahan, State's Attorney, all of Chicago, (Paul P. Biebel, Jr., Assistant State's Attorney, of counsel,) for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This is an appeal from an order of the Circuit Court affirming the

decision of the Chicago Board of Election Commissioners, which sustained an objection to the nominating petition of plaintiff-appellant, Chester A. Lizak.

On December 20, 1971 plaintiff filed with the County Clerk his petition for nomination for the office of Ward Committeeman, Republican Party, 45th Ward, City of Chicago. On December 31, 1971 defendant filed with the County Clerk objections to the candidacy of plaintiff, setting forth as his sole objection the fact that plaintiff's petition contained signatures in excess of the maximum allowed by the following provision of the Illinois Election Code: [1]

"Such petitions for nominations shall be signed:

\* \* \*

(h) If for a candidate for precinct committeeman, by at least 10 primary electors of his party of his precinct; if for a candidate for ward committeeman, by not less than 10% nor more than 16% of the primary electors of his party of his ward; if for a candidate for township committeeman, by not less than 5% nor more than 8% of the primary electors of his party in his township or part of a township as the case may be."

The Board of Election Commissioners conducted hearings on this objection on January 3, 1972 and January 4, 1972. At the hearings it was undisputed that the maximum number of petition signatures allowable under the Election Code for plaintiff's ward was 1716. The evidence adduced established that the petitions filed by plaintiff contained more than 1716 signatures, but that plaintiff had lined out enough signatures to bring the number of remaining signatures below that maximum. It was further established that, prior to the filing of plaintiff's petitions, the County Clerk's office had received no written revocations of signatures. This was significant because of the following provision of the Election Code: [2]

"The petitions, when filed, shall not be withdrawn or added to, and no signatures shall be revoked except by revocation filed in writing with the clerk or other proper officer with whom the petition is required to be filed, and before the filing of such petition."

On January 7, 1972 the Board filed its decision sustaining defendant's objection, declaring that plaintiff's petition was invalid and ordering that plaintiff's name should not be permitted on the March 21, 1972 primary election ballot. On January 14, 1972, pursuant to Section 10—10.1 of the Election Code,[3] plaintiff filed with the Circuit Court a

[1] Ill. Rev. Stat. 1971, ch. 46, par. 7—10.
[2] Ill. Rev. Stat. 1971, ch. 46, par. 7—10.
[3] Ill. Rev. Stat. 1971, ch. 46, par. 10—10.1.

complaint for judicial review of the Board's decision. That complaint sought reversal on the grounds that the decision of the Board was contrary to the evidence, that plaintiff had in fact filed signatures below the maximum permitted by Illinois law and that Section 7—10(h) of the Election Code constituted an unconstitutional deprivation of Equal Protection and Due Process of Law. Answers were filed by defendants on January 24, 1972. On January 28, 1972 plaintiff filed a motion seeking leave to amend his complaint in order to add a second count, which would have cited as additional grounds for reversal, "the arbitrary, capricious and discriminatory action of the Board  *  *  *." Specifically, Count II alleged that in another proceeding before the Board, the petition of one Richard Mell had been sustained despite the fact that the basis of the challenge to Mell's petition was identical to the basis of the challenge to Lizak's petition. On February 3rd, the Circuit Court orally denied the motion for leave to amend. On February 8th that motion was again denied, this time by written order. On February 9th, in an order reflecting that the Court had reviewed the record of the *Mell* case despite its denial of plaintiff's motion to amend, the decision of the Board of Election Commissioners was sustained. This appeal followed. On March 14, 1972 we entered an order affirming the decision of the Circuit Court and advised that an opinion would be filed at a later date.

On appeal, plaintiff concedes that the total number of signatures on his petitions—lined out signatures added to unaltered signatures—exceeds the statutory maximum. In defense of the validity of the petition, he offers four contentions: 1) that Section 7—10 of the Election Code creates an irrational classification, thereby denying plaintiff Equal Protection of the Law; 2) that the "revocation of signatures" paragraph of Section 7—10 should be interpreted to allow a candidate to strike signatures from his petitions without filing written notice with the County Clerk; 3) that it was error to deny plaintiff's motion for leave to file an amended complaint; and 4) that evidence pertaining to the allegations of Count II of the amended complaint conclusively established that the Board's decision was arbitrary and capricious.

■■ Plaintiff's first contention raises a constitutional issue requiring close analysis. Since 1927 the Illinois Election Code has provided minimum and maximum limitations upon the number of signatures which may be submitted on primary nominating petitions for all State offices. Since 1933 the Election Code has provided a minimum-maximum limitation on primary petitions for ward and township committeemen as well. We note, however, that our Election Code has never contained maximum

limitations pertaining to any other public or political office. Plaintiff does not contend that these maximum signature limitations are void *per se*. Rather, he contends that the imposition of that burden on only two classes of office-seekers constitutes an irrational classification, because whatever justification might be asserted in support of maximum signature limitations generally would apply equally to all offices on the primary ballot. We must agree that it is difficult to perceive the legislative wisdom in confining maximum signature limitations only to State offices and to ward and township committmen offices. It does not necessarily follow, however, that this statutory scheme violates plaintiff's constitutional rights. It is not every distinction or discrimination in the law which is unconstitutional. The Equal Protection Clause is "limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers." (*Briscoe v. Kusper* (7th Cir. 1970), 435 F.2d 1046, 1052.) It has been recognized that legislatures are often limited to achieving reforms piecemeal, proceeding by compromise a step at a time toward a desired comprehensive solution. (*Williamson v. Lee Optical Co.* (1955), 348 U.S. 483; *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802.) A statutory scheme is not constitutionally infirm merely because it fails to apply its remedies whereever they may reach. (*West Coast Hotel Co. v. Parrish* (1937), 300 U.S. 379; See also "Developments in the Law-Equal Protection," (1969), 82 Harv. L. Rev. 1065, 1084-85.) In view of this precedent, and despite our belief that the statutory classification at bar lacks a rational basis, we shall defer to the wisdom of our legislature. We hold that the imposition of maximum signature limitations on some offices, and not on others, did not serve to deny plaintiff his right to Equal Protection.

■■ Plaintiff's second contention is that Section 7—10 of the Election Code, which, in part, requires a filed, written revocation in order to revoke a signature from a primary petition, is addressed solely to petition-signers and does not preclude candidates from undiscriminately striking signatures from their own petitions. We cannot agree. We believe that this provision was in fact directed primarily at candidates, affording them a simple means of striking undesired signatures from petitions while simultaneously protecting them from fraudulent alterations subsequent to filing. The provision may even have been designed specifically to benefit a candidate who finds himself with signatures in excess of the statutory maximum. While we recognize the seeming inequity of enforcing this provision against the interests of the party it was intended to benefit, we cannot ignore the clear mandate of the statutes. Plaintiff's failure to comply therewith obligated the Board of Election Commissioners to compute all of the filed signatures, including all signatures which

had been lined-out. The Board and Circuit Court did not err in their interpretations of the statute.

Plaintiff's third contention is that the trial court erred in denying him leave to file an amended complaint. Section 10—10.1 of the Election Code[4] requires that petitions for judicial review of Board decisions must be filed within 10 days after the decision of the Board. The statute does not provide for amendments to petitions for judicial review. Plaintiff contends that Section 1 of the Civil Practice Act[5] and Section 14 of the Administrative Review Act[6] require the application of other provisions of the Civil Practice Act, specifically Section 46,[7] to the Board of Election review proceedings. Section 46 provides, in part:

"At any time before final judgment amendments may be allowed * * * changing the cause of action or defense or adding new causes of action or defenses * * *."

While we entertain serious doubts as to the general applicability of the Civil Practice Act to Board of Election Commissioners review proceedings, we find it unnecessary to decide that issue. It is established that a litigant's right to amend pleadings rests within the sound discretion of the trial court. (*Mangel & Co. v. Village of Wilmette,* 115 Ill.App.2d 383, 253 N.E.2d 9.) Assuming arguendo the applicability of Section 46 to the proceeding in the Circuit Court, we perceive no abuse of discretion by the denial of this particular motion for leave to amend. The Circuit Court explained its ruling as follows:

"* * * [I]f you are asking why I denied the petition to amend, I felt that the Mell matter would be introducing new evidence before this reviewing court and under the statute I don't think we have the authority to accept new evidence."

We concur in this conclusion and recognize it is a sound basis for denying plaintiff's motion for leave to amend his complaint.

Because of our conclusion with regard to his third contention, we find it unnecessary to consider plaintiff's allegations of arbitrary and capricious conduct by the Board. The complaint, which was never successfully amended, contained no such allegations, and it would be inappropriate to decide issues which were not effectively raised in the Circuit Court. We affirm.

Judgment affirmed.

SCHWARTZ and BURKE, JJ., concur.

---

[4] Ill. Rev. Stat. 1971, ch. 46, par. 10—10.1.
[5] Ill. Rev. Stat. 1971, ch. 110, par. 1.
[6] Ill. Rev. Stat. 1971, ch. 110, par. 277.
[7] Ill. Rev. Stat. 1971, ch. 110, par. 46.