Chester A. **LIZAK**, Plaintiff,

v.

Stanley T. **KUSPER**, Jr., et al.,
Defendants.

No. 72 C 227.

United States District Court,
N. D. Ill., E. D.
Jan. 29, 1974.

Chester A. Lizak, pro se.

Ian Schultz, Thomas Foran, and Richard G. Schultz, for Canary, Suthers, Hanly & Coleman.

Howard Miller, for Canary and Suthers.

Bernard Carey, State's Atty., for Barrett.

Andrew M. Raucci, Chicago, Ill., for Zadrozny.

## MEMORANDUM OPINION and JUDGMENT ORDER

AUSTIN, District Judge.

This matter concerns Plaintiff Lizak's claim that his civil rights were violated by the Chicago Electoral Board. Plaintiff seeks declaratory and monetary relief and demands that the Illinois Election Code provision governing nominating petitions for ward committeeman candidates be declared unconstitutional. For reasons stated herein, Plaintiff's requests are denied and his amended complaint is dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.Pro. 12(b)(6).

## I. FACTS

On December 20, 1971, Plaintiff, a resident and qualified registered voter in the City of Chicago's 45th Ward filed nominating petitions for his candidacy as the 45th Ward Republican Committeeman in the March, 1972 primary election. On December 31, Defendant Zadrozny formally objected to Lizak's candidacy on the sole ground that his petition contained signatures in excess of the statutory maximum permitted by § 7–10 of the Illinois Election Code, Ch. 46

(1971). That section provides that certain political candidates, including ward committeeman candidates, may not file petitions containing signatures of more than 16% of the primary electors of their party in their ward. Additionally, it stipulates that a signature may not be withdrawn from a nominating petition except by the written revocation of the signor prior to the filing of the petition.

In early January, 1972, the Chicago Electoral Board—staffed by Defendant Board members Canary, Hanly, Coleman and Suthers pursuant to 46 Ill.Rev.Stat. § 7–13 (1971)—conducted a hearing on Zadrozny's objection and determined that the maximum number of signatures allowable for Plaintiff's party and ward was 1716. It further decided that Lizak's petition contained more than 1716 signatures, but that Plaintiff, without proper authorization, lined out enough names to bring the number of remaining signatures below that maximum. In addition, the Board rejected Lizak's contention that the "written revocation" provisions of § 7–10 did not apply to candidates who choose ·to strike undesired signatures before filing their petitions. On January 7, 1972, the Board sustained the objection and ordered that Lizak's name not be printed on the primary ballot.

Plaintiff promptly sought judicial review in the Cook County Circuit Court, alleging that the finding of "too many signatures" was contrary to the evidence.

Prior to a decision by the Circuit Court, Plaintiff discovered that, over nine separate objections including an allegation of excessive signatures, the Electoral Board approved the 1972 primary nominating petition of Richard Mell, a candidate for Democratic Ward Committeeman in Chicago's 33rd Ward. Although the maximum number of signatures allowable for a Democratic committeeman candidate in that ward was 1972, Mell filed petitions containing over 2000 signatures, some of which were improperly lined out by the candidate prior

to filing. Upon examination of Mell's documents, the Board sustained several of the objections, invalidated various signatures, and held that, after the invalidation and elimination of the objectionable signatures, the petition did not exceed the statutory maximum.

On January 27, 1972, Plaintiff initiated this action, seeking a temporary injunction and charging that the Board's decisions in *Lizak* and *Mell* were inconsistent and arbitrary, and constituted rank political discrimination and a violation of Plaintiff's civil rights.[1] At the same time, Plaintiff petitioned the Cook County Circuit Court for leave to amend his complaint to include factual allegations concerning the existence and arbitrary nature of the alleged inconsistencies. Leave to amend was summarily denied.

On February 9, 1972, the Circuit Court affirmed the *Lizak* decision and, stating that it had reviewed and considered the *Mell* record, held that there was no inconsistency between the two cases.

On review before the Illinois Appellate Court, Plaintiff sought reversal of the lower forum on three grounds. First, he contended that, since the maximum signature limitation of § 7–10 applied only to certain political offices, the classification was irrational and an unconstitutional denial of equal protection and due process. Second, Lizak urged that § 7–10 should be interpreted to allow candidates to strike signatures from petitions without obtaining and filing the written revocation of the signor. Last, Plaintiff maintained that the *Lizak-Mell* findings were inconsistent, arbitrary, and violative of his civil rights.

In *Lizak v. Zadrozny*, 283 N.E.2d 252 (Ill.1972), the Appellate Court carefully considered Plaintiff's challenge to § 7–

10 and held the provision valid and constitutional. Next, the Court approved and adopted the prior interpretations of § 7–10, stating that a nominating petition signor may lawfully rescind his signature only by written revocation prior to the filing of the petition. Finally, the Court found that it could not properly consider the alleged inconsistencies since the necessary factual allegations were never successfully incorporated into the complaint. Accordingly, the orders of the Circuit Court and the Electoral Board were affirmed.

## II. COMPLAINT AND ISSUES

On these facts, Plaintiff now returns to federal court and seeks a declaratory judgment that the Board's conduct was inconsistent, arbitrary, capricious, discriminatory, and in violation of due process and equal protection. *See* 42 U.S.C. § 1983; 28 U.S.C. §§ 1343, 2201, and 2202. He further requests that a three-judge panel be convened to declare § 7–10 unconstitutional on its face as violative of due process and equal protection. *See* 28 U.S.C. §§ 2281 and 2284. In addition, Lizak demands judgment in the amount of $20,000, as well as punitive and exemplary damages.

This matter comes before me now on various motions by the parties. Plaintiff, Defendant Board members, and Defendant Cook County Clerk filed separate cross-motions for judgment on the pleadings. *See* Fed.R.Civ.Pro. 12(c). Additionally and alternatively, Defendant Board members move to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.Pro. 12(b)(6), and Defendant County Clerk moves for summary judgment. Fed.R.Civ.Pro. 56. Defendant Zadrozny makes no motion, but joins with the other Defendants in raising the

1. On February 18, 1972, the District Court dismissed the federal action on the basis of the abstention doctrine of *Jackson v. Ogilvie*, 401 U.S. 904, 91 S.Ct. 642, 24 L.Ed.2d 803 (1971). While affirming the lower court's decision to abstain pending resolution of the state litigation, the Seventh Circuit Court of

Appeals found that outright dismissal was error. The action was reinstated, reversed, and remanded by order of September 28, 1972. Plaintiff was granted leave to amend and did amend his complaint on July 20, 1973.

defenses of res judicata, justiciability, standing, and mootness.

## III. RES JUDICATA AND THE "ENGLAND" DOCTRINE

Defendants maintain that the adverse findings by the Circuit and Appellate Courts bar the present action under traditional concepts of res judicata as interpreted by *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

In *England*, plaintiffs sought declaratory and injunctive relief for alleged civil rights violations. The District Court invoked the doctrine of abstention and, retaining jurisdiction, remitted the plaintiffs to state court, where all issues were resolved in favor of the defendants. Upon return to federal court, plaintiff's complaint was dismissed on the grounds that his federal constitutional claims were raised, considered, and decided in the state forum. The Supreme Court pronounced that:

> We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court.

375 U.S. at 419, 84 S.Ct. at 467. Thus stated, *England* does not concern res judicata principles as Defendants herein contend; rather, it imputes a mandatory rule of forum selection to a litigant who unreservedly presents his federal complaints to a state court for decision. *See Note*, 1964 U.Ill.L.For. 476. In any event, certain portions of the amended complaint here are barred by the prior decisions.

In state court, Plaintiff Lizak "freely and without reservation" presented and argued all of his federal and state claims. As outlined above, his restrictive interpretation of § 7–10 was reviewed and rejected. Indeed, the Appellate Court specifically found that the construction relied upon by the Board and the lower court was the "clear mandate" of the statute. *Lizak v. Zadrozny, supra* at 255. Additionally, the courts examined § 7–10 and determined that it is constitutional on its face. Under the *England* doctrine, these issues are now foreclosed from consideration by this Court. Accordingly, Plaintiff's request for a three-judge panel is inappropriate and must be denied.

The sole complaint remaining for decision is whether the Board's alleged inconsistent findings violated Plaintiff's civil rights. Although the Cook County Circuit Court purported to resolve this issue in its February 9th order, it did not possess the jurisdictional authority to do so since it previously denied Plaintiff's motion to amend his complaint to include the required factual allegations. *See Lizak, supra* at 255.

## IV. JUSTICIABILITY, STANDING, AND MOOTNESS

Defendants' contentions concerning justiciability, standing, and mootness lack merit. Even after delimination of the issues, Plaintiff's complaint presents questions of due process and equal protection that may properly be heard by a federal district court. *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). *See also Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); *Hadnott v. Amos*, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969). Likewise, denial of Plaintiff's petition to be listed as a committeeman candidate in the primary election constitutes sufficient aggrievement to grant Plaintiff standing to sue under the Civil Rights Act, 42 U.S.C. § 1983. *See Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Finally, although the election that prompted this action has taken place, that event does not moot this case since Plaintiff seeks damages

for the alleged civil rights violation. *See Briscoe, supra* at 1052.

## V. THE ALLEGED VIOLATION

Succinctly stated, it is Plaintiff's position that the Board's alleged inconsistent rulings in the "identical" *Lizak-Mell* situations were arbitrary, the result of political discrimination, and a denial of due process and equal protection.[2] Without more, this allegation fails to state a claim upon which relief can .be granted.

■■ To sustain a complaint such as this, it is incumbent upon the plaintiff to allege, with particularity, intentional and purposeful overt actions committed by the defendant in the course of the alleged violation. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Johnson v. Hood,* 430 F.2d 610 (5th Cir. 1970); *Briscoe, supra; Bohus v. Board of Education,* 447 F.2d 821 (7th Cir. 1971). As the Supreme Court observed in *Snowden:*

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.

321 U.S. at 8, 64 S.Ct. at 401. Plaintiff's complaint here alleges the existence and substance of the two decisions and charges, without stating more, that the different results were the result of "arbitrary, capricious, and discriminatory" conduct.[3] Again in *Snowden,* the Court stated that:

> The lack of any allegations in the complaint here, tending to show a purposeful discrimination between persons or classes of persons is not supplied by the opprobrious epithets "willful" and "malicious" applied to the Board's failure to certify petitioner as a successful candidate, or by characterizing that failure as an unequal, unjust, and oppressive administration of the laws of Illinois. These epithets disclose nothing as to the purpose or consequence of the failure to certify, other than that petitioner has been deprived of the nomination and election.

321 U.S. at 10, 64 S.Ct. at 402. In short, Plaintiff's conclusory allegations of improper conduct do not state a claim of invidious discrimination necessary to support relief under the Civil Rights Act.[4] *See Johnson, supra.* The amended complaint must be dismissed.

## VI. CONCLUSION

Defendant Board members' motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted is granted. All motions

---

2. When asserted in this context, Plaintiff's due process rights are identical to his equal protection rights. Since it is the alleged *conduct* of the Board that is under scrutiny here and since the constitutionality and interpretation of 46 Ill.Rev.Stat. § 7–10 have already been decided by the state courts, Plaintiff's due process claims are limited to a determination as to whether the Board applied § 7–10 against him equally and without discrimination. As such, this is merely a restatement of the equal protection claim and will be treated accordingly.

3. Contrary to Plaintiff's implied assertions, the pleadings establish that Richard Mell was not the regular Democratic candidate in the March, 1972 primary, but rather an insurgent candidate seeking nomination.

4. A close examination of the *Lizak-Mell* cases conclusively demonstrates that the two decisions are not identical and that the Board's application of § 7–10 was consistent in both instances.

The objection to Lizak's petition was based *solely* on the allegation of excessive signatures. Once the Board determined that the petition exceeded the statutory maximum and that Lizak had no authority to line out the additional names, it had no alternative but to invalidate the petition. As the Appellate Court states, this is the "clear mandate" of the statute.

On the other hand, the Board considered *multiple* objections to Mell's papers and invalidated various signatures. After eliminating a number of names, the Board properly ruled that Mell's petition did not exceed the statutory maximum, even when the improperly lined-out names were included.

for judgment on the pleadings are denied. Defendant Kusper's motion for summary judgment is denied. Plaintiff's request for a three-judge panel to consider the constitutionality of 46 Ill. Rev.Stat. § 7–10 is inappropriate and is denied. The amended complaint is dismissed. Case dismissed.