**Thomas J. RICHARDS, James Hicks and James Twine, Plaintiffs,**

v.

**Michael E. LAVELLE, Marie H. Suthers, and Corneal A. Davis, in their capacity as members of the Board of Election Commissioners of the City of Chicago, State of Ill., Defendants.**

**Cecil A. Partee and Howard L. Stevenson, Intervening Defendants.**

**No. 80 C 154.**

United States District Court, N. D. Illinois, E. D.

Jan. 28, 1980.

---

Ian H. Levin, Paul Cottrell, Karon, Morrison & Savikas, Chicago, Ill., for plaintiffs.

Jayne W. Barnard, Jenner & Block, Chicago, Ill., for Chicago Council of Lawyers as amicus curiae.

Michael Levinson, Gen. Counsel, Board of Elections Commissioners, Tom Scheuneman, O'Brien, Carey, McNamara, Scheuneman & Campbell, Chicago, Ill., for defendants.

Cecil A. Partee & Arthur R. Waddy, Chicago, Ill., for intervening defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

In December, 1979, plaintiff Thomas J. Richards filed his nominating papers for the office of Democratic Ward Committeeman of Chicago's 20th Ward. His petitions contained 2083 signatures. On January 4, 1980, defendants in their capacity as members of the Board of Election Commissioners of the City of Chicago upheld an objection to the petitions on the ground "that the petition signatures filed by the candidate exceed the statutory maximum for election to the office of Ward Committeeman, 20th Ward Democratic Party." Richards was not certified as a candidate.

Thereafter on January 11, 1980, candidate Richards, together with two voters from his ward, brought suit for declaratory judgment and injunctive relief. Since the election will be held March 18, 1980, plaintiffs sought immediate relief requiring that Richard's name be placed on the ballot. Cecil A. Partee, who is the incumbent ward committeeman and is on the ballot, and Howard L. Stevenson, who objected to Richard's petitions, petitioned to intervene and the petition was granted. Leave was also granted to the Chicago Council of Lawyers to file memoranda as amicus curiae.

After expedited discovery, this matter was heard on January 22, 1980 upon plaintiffs' motion for a preliminary and permanent injunction. The court has also had the benefit of numerous memoranda filed by amicus and the parties both before and after the hearing.

For the reasons hereinafter stated, the defendants are enjoined from failing and refusing to include plaintiff Richards' name on the ballot and are directed to place his name on the ballot as a candidate for Ward Committeeman, Chicago's 20th Ward, Democratic Party, in the March election.

This case involves the maximum petition signature limitation of Ill.Rev.Stat., Ch. 46, Sec. 7–10(i). That section, in relevant part, provides that petitions for nomination as ward committeeman in Chicago shall be signed by not less than 10% nor more than 16% of the primary electors of the candidate's party in his ward. Maximum signature limitations for ward and township committeeman petitions and for primary nominating petitions for wholly statewide office have been in effect approximately 50 years. Their original purpose is unknown. There are no such limitations in either the election or nominating process for any other party office or nomination for office in federal, state or local government, although independent candidates for election and new political parties are subject to maximum limitations.

The limitation is plainly stated in the statute and is plainly described in publications of state, county and city election authorities. The minimum number of signatures for Democratic committeeman petitions in 1980 in the 20th Ward is 1073; the maximum is 1716. Both figures are plainly set forth in the public election materials distributed by both the county and city election authorities. Plaintiff Richards testified that he was aware of the minimum and maximum figures, that he intended to file 1695 signatures, and that his filing of 2083 signatures was wholly inadvertent.

Plaintiffs and amicus urge that the Board's action in denying Richards access to the ballot deprives them of their fundamental rights to associate and to cast an effective vote. Relying on cases in which election law requirements substantially impaired access to the ballot, they contend that the maximum limitation must be subjected to strict scrutiny and that, unless it is the least drastic means of furthering a compelling state interest, it must be struck down as violative of the First and Fourteenth Amendments. They further urge a maximum limitation applicable to the ward committeeman office and selected others but not to most electoral contests in Illinois imposes an irrational and arbitrary classification in violation of the equal protection clause. Finally, amicus urges that the filing limitation imposes an unlawful chilling influence on the political expression of candidates and their supporters because it unnecessarily discourages solicitation of signa-

tures, a legitimate means of political expression.

■ Those contentions argue too much. Substantial impairment of the voters' ability to express their political preferences necessitates strict scrutiny to determine whether there is a compelling state interest served by the least drastic alternative. See e. g. *Illinois State Board of Elections v. Socialists Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). However, while the right of an individual to be on the ballot is intertwined with voters' rights, the right of a specific individual to run for office is not fundamental nor is ". . . every limitation or incidental burden on the exercise of voting rights . . . subject to a stringent standard of review." *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972).

■ The constitutional sensitivity is to denial of access to or excessive burdens upon any identifiable classification of voters, not to a specific candidate or his supporters. *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir. 1979), petition for cert. filed. If such burdens were demonstrated here, we would necessarily searchingly inquire into whatever compelling necessity for those burdens was advanced. But no such burdens were shown. This is not a case in which high filing fees or excessive signature requirements discourage access to the electoral process. All the candidate had to do was count.*

That, however, does not end the matter. As defendants concede, there must be a rational basis for the maximum limitation.

Many of the election cases, whether applying a strict scrutiny or a rational basis standard, have focused on the state interest in an election system which requires candidates to demonstrate a "significant modicum of support", *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), in order that ballots not be laundry lists of frivolous candidacies. Clearly that interest is not being served here, as Richards filed more signatures than the minimum.

■ Two state interests are suggested. One is advanced by the intervenors. They urge that the limitation prevents a monopolization of signatures by an entrenched candidate, thus preventing others from access to the ballot. There is nothing, however, which presently prevents a candidate from going on the ballot with signatures of voters who have also signed petitions for his or her opponent. *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970), *reh. denied* 1971. No candidate can monopolize the voting pool. Further, nothing suggests that "monopolization" is other than a conceptual possibility.

Conversely, and contrary to the contention of amicus, it is difficult even to conjecture that the filing limitation will have any appreciable chilling impact on political expression when there is no limit on solicitation. Indeed, both plaintiff Richards and the incumbent intervenor testified that they tell their supporters to seek as many signatures as they can or wish.

■ The second state interest advanced by defendants is more in keeping with the

---

* Amicus in a post-hearing memorandum, with affidavit, infers that the spread between the minimum and the maximum is so narrow that political groups within the Democratic Party who lack political experience and sophistication are overly burdened. It appears to suggest that such groups are likely to make numerous errors in collecting signatures and, therefore, challengers to established precinct organizations risk having objections whittle away their signatures to below the minimum even if they file the maximum. Plaintiffs, however, did not so allege and there has been no evidence introduced of petitions containing close to the maximum number being rejected, after objections, because of their failure to reach the minimum. While it is undoubtedly true that the circulation of petitions is a highly effective procedure for developing and identifying support and for enlisting campaign workers, as amicus suggests, the section under consideration relates to the number of signatures filed, not to the number obtained, a matter commented upon elsewhere in this memorandum. Nor has there been any causal connection established between the historic difficulties of ward committeeman challengers in prevailing against incumbents and the maximum signature limitation of Sec. 7–10(i), much less any constitutionally impermissible relationship.

Illinois Supreme Court's explanation in *Lewis v. Dunne*, 63 Ill.2d 48, 344 N.E.2d 443 (1976) that the purpose of Sec. 7–10, generally, is to provide an orderly election procedure. Unquestionably, providing an orderly election procedure is both a rational state interest and a state responsibility. We are dealing here, however, with the maximum limitations of Sec. 7–10(i). In the only reported case on that section, the Illinois Appellate Court, while leaving the matter to the inarticulated wisdom of the legislature, commented that ". . . it is difficult to perceive the legislative wisdom in confining maximum signature limitations only to State offices and to ward and township committeeman offices. . . . (It is) our belief that the statutory classification at bar lacks a rational basis . . . ." *Lizak v. Zadrozny*, 4 Ill.App.3d 1023, 283 N.E.2d 252 (1st Dist. 1972).

Defendants urge that Sec. 7–10(i) should be considered in light of the facts and circumstances behind the law, the interests which the state claims to be protecting, and the interests of those who are disadvantaged by the classification, relying upon *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed. 714, rehearing denied 417 U.S. 926, 94 S.Ct. 2635, 41 L.Ed.2d 230 (1974). They then claim that a maximum limitation is a desirable and non-burdensome measure for protecting the integrity of the election process. The purport of the evidence they presented at the hearing is that ward committeeman contests give rise to far more objections than do various other races, that the Board has only five days to act on objections, and that limitations on the number of signatures permits the Board to proceed in an orderly manner to determine whether or not the petitions contain a sufficient number of valid signatures. In short, the bottom line justification is administrative convenience in carrying out clearly appropriate responsibilities.

Here it is the defendants who are contending too much. This court is not persuaded that a maximum limitation on the signatures the Board need consider is necessarily unreasonable. The Board, however, has interpreted Sec. 7–10(i) as requiring it to leave off the ballot otherwise qualified candidates who inadvertently file too many signatures. The statute does not specifically so require. Assuming that limitations have an administrative justification, the same purpose can be served in a rational electoral system by returning the excess petitions, by refusing to consider any signatures beyond the statutory maximum or by concluding the objection hearing as soon as the minimum required signatures have been validated. This court is unable to conclude that the draconian sanction of removal from the ballot if surplus signatures are filed has any rational relationship to the state's interest in orderly election procedures.

Defendants urge that the level of political conflict respecting ward committeeman positions is far greater than that in state central committeeman races; and that therefore justifies the administrative determination to remove over-filing ward committeeman candidates from the ballot. The differences in position are real; they are also irrelevant. Probably the most comparable position is that of alderman. Defendants' evidence was that aldermanic elections are comparably contentious. Those have no maximum limitations. Nothing indicates that the Board does not resolve objections in those contests in an appropriate fashion or that, without the maximum, the procedures are somehow disorderly.

Reasonable rules governing the electoral process must reasonably accommodate with the inevitable sloppiness which is inherent in citizen selection of their representatives. Quite possibly because of a prior excessive state court deference to the technical requirements of election laws, we have seen in recent years an increasing appeal to constitutional doctrine as the measure of their validity. At the same time, and possibly as a consequence, state courts have increasingly used, without so stating, due process standards in interpreting state statutes. Accordingly, technical infractions which cause no confusion, *Lewis v. Dunne, supra*, or are unrelated to preservation of the in-

tegrity of the electoral process and impose no undue burden on that process, *Stevenson v. County Officers Electoral Board*, 58 Ill. App.3d 24, 15 Ill.Dec. 571, 373 N.E.2d 1043 (3rd Dist. 1978), *Williams v. Butler*, 35 Ill. App.3d 532, 341 N.E.2d 394 (4th Dist. 1976), have been considered in substantial compliance with the law.

One questions whether the courts of Illinois would today, on the basis of Sec. 7–10(i), sanction denial from the ballot of a petitioner who inadvertently filed 367 signatures too many. But that is not the question before this court, and this court necessarily must decide the matter in a constitutional context.

On the basis of the evidence presented, this court concludes that the ballot denial is an irrational classification and is unreasonable and arbitrary governmental action. The defendants are, accordingly enjoined as previously set forth.