Thomas J. RICHARDS, James Hicks, and James Twine, Plaintiffs-Appellees,

v.

Michael E. LAVELLE, Marie H. Suthers, and Corneal A. Davis, in their capacity as members of the Board of Election Commissioners of the City of Chicago, State of Illinois, Defendants-Appellants,

Cecil A. Partee and Howard L. Stevenson, Intervening Defendants.

No. 80–1123.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 11, 1980.

Decided Feb. 13, 1980.

Rehearing and Rehearing En Banc Denied May 2, 1980.

---

Tom Scheuneman, Chicago, Ill., for appellants.

Ian H. Levin, Paul Cottrell, Chicago, Ill., for appellees.

Arthur R. Waddy, Chicago, Ill., for intervening defendants.

Jayne W. Barnard, Frances H. Krasnow, Jenner & Block, Chicago, Ill., amicus curiae.

Before FAIRCHILD, Chief Judge, SWYGERT and SPRECHER, Circuit Judges.

PER CURIAM.

This appeal has been briefed on an emergency basis, due to the time constraints faced by the defendants, the Chicago Board of Election Commissioners and its members, in arranging for ballots to be printed for the primary election to be held on March 18, 1980. Under Rule 34 of the Federal Rules of Appellate Procedure, we have decided this appeal without oral argument. Due to the emergency nature of the appeal, we have dispensed with the notice generally provided under Circuit Rule 14(f).

I

A primary election will be held in the City of Chicago on March 18, 1980.[1] Pursuant to Ill.Rev.Stat. ch. 46, § 7–13, the defendants are responsible for certifying the names of candidates to be included on the ballot for this election.

---

1. While the election itself is generally referred to as the *primary* election, as to candidates for Ward Committeeman, it is the *only* election. The candidate receiving a plurality of votes is elected Ward Committeeman. Ill.Rev.Stat. ch. 46, § 7–8(b).

Plaintiff Richards sought inclusion on the ballot as a candidate for Democratic Ward Committeeman in the 20th Ward of the City of Chicago. The other plaintiffs are voters who desire to vote for Richards in the election. The defendants propose to omit Richards from the ballot because he submitted more signatures on his nominating petition than the maximum permitted by Ill.Rev.Stat. ch. 46, § 7–10(i). This action was brought to challenge the constitutionality of removing Richards from the ballot.

On January 28, 1980, the district court filed a Memorandum and Order, 483 F.Supp. 732, which had the effect of permanently enjoining the defendants from failing to include Richards' name on the ballot, and they were directed to place his name on the ballot. A stay pending appeal was denied by the district court and by this court. We did, however, set this case on an emergency schedule so that we would have an opportunity to address the merits prior to the time that the election ballots are actually printed.

## II

A person seeking inclusion on the ballot as a candidate for Ward Committeeman must meet a number of requirements under the Illinois Election Code, Ill.Rev.Stat. ch. 46. This suit solely relates to the validity of the maximum signature requirement imposed on some offices by Ill.Rev.Stat. ch. 46, § 7–10, as enforced by removal from the ballot. The statute imposes maximum signature requirements for state offices, for delegates elected from the state at large, for ward committeemen and for township committeemen.[2]

It is undisputed that the defendants publish information listing, where applicable, maximum signature requirements. In fact, Richards testified that he was aware of the maximum imposed of 1716, and that he

intended to file a petition containing 1695 signatures. However, apparently through mathematical error by Richards, the petition which he actually filed contained 2083 signatures.

Ultimately, the defendants sustained an objection to Richards' petition on the ground that it contained more signatures than the permitted maximum, and certified to the County Clerk that Richards' name was not to be printed on the ballot.

## III

The parties disagree almost completely as to the proper method of analysis to be applied in deciding this case. They disagree as to whether the "strict scrutiny" or "rational basis" test applies, as to whether the statute implicates fundamental rights of the plaintiffs, and as to whether the state demonstrated a compelling state interest to support its action, a rational basis, or no basis whatsoever.

For the sake of clarity, we will first summarize the conclusions of the district court. The district court held that the fundamental rights of the voters were not sufficiently implicated to trigger strict scrutiny, and that there were no excessive burdens on identifiable classes of voters. As a result, the maximum limitation was analyzed to determine whether it was supported by a rational basis. The district court found a rational basis in providing an orderly election procedure, but concluded that there was no rational relationship between the interest which the state asserted and the sanction applied by removing a candidate from the ballot. The district court concluded that the ballot denial was "an irrational classification and is unreasonable and arbitrary governmental action." As a result, the defendants were enjoined and directed to place Richards' name on the ballot.

2. In *Bowe v. Board of Election Commissioners*, 614 F.2d 1147 (7th Cir. 1980), we discussed the minimum signature requirements imposed by the same statute. We quoted the relevant provisions of the statute in n.3 of that opinion and will not repeat the same provisions here. *See* also Ill.Rev.Stat. ch. 46, § 7–11 (setting maximum signature requirements for President of the United States) and § 7–4 (defining "state office" as used in § 7–10(a) to include United States Senator).

For the reasons which we will state, we agree that there was no rational basis for the state's action, and that as a result the due process rights of the plaintiffs have been violated. Because of our conclusion, we do not find it necessary to address other portions of the district court's analysis.

## IV

■ Several broad constitutional principles have a bearing on this appeal. First, the state has a substantial interest in preserving the integrity of its electoral process and in regulating the number of candidates appearing on the ballot. In fact, those interests are compelling. *American Party of Texas v. White,* 415 U.S. 767, 782 n.14, 94 S.Ct. 1296, 1307 n.14, 39 L.Ed.2d 744 (1974); *Bowe v. Board of Election Commissioners,* 614 F.2d 1147 (7th Cir. 1980). Second, election cases frequently implicate the fundamental rights of individuals to associate to advance political beliefs and the rights of voters to vote effectively. *Illinois State Board of Elections v. Socialist Workers' Party,* 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979). At the same time, *Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972) makes clear that "not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." We recently reiterated this point in *Trafelet v. Thompson,* 594 F.2d 623, 632 (7th Cir. 1979), *cert. denied,* 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979), a case involving only a limitation on voters incidental to a classification not aimed at voters or elections.

In this case, we agree with the district court that there is no substantial impact on the fundamental rights of voters, or of political association. Unlike the situation of a minimum signature requirement, *see Bowe v. Board of Election Commissioners, supra,* a maximum limitation imposes no significant burden on anyone. As the district court put it, "All the candidate had to do

was count." As a result, challenges to such limitations will arise only in the rare case where, as here, a candidate files too many signatures as a result of mistake or inadvertence.

■ Nevertheless, the action in question must be supported by a rational basis. The primary argument of the defendants on this point is that a maximum limitation serves the legitimate interest of providing an orderly election procedure. They point out that the Board must act on objections to Ward Committeeman petitions within a period of five days, while no similar time limitation is imposed for other races. Ill. Rev.Stat. ch. 46, § 7–13 and § 10–10. Evidence was presented to the effect that Ward Committeeman races give rise to an extremely high rate of objections, further compounding the administrative burden faced by the defendants. Because of this fact, a maximum limit of signatures which the Board must consider permits the Board to proceed in an orderly and timely manner to determine whether or not the petitions contain sufficient valid signatures. We agree that the maximum limitation serves the legitimate state interest of providing an orderly election procedure, especially in light of the time constraints placed on the defendants. As a result, there is a rational basis for the limitation.

■ At this point, the defendants urge that our analysis should be at an end, and that the maximum signature limitation should be upheld. We cannot agree. The defendants gloss over what we believe to be the most important aspect of this case: the fact that there are really *two* actions of the state being challenged here. First, the state has chosen to limit the number of signatures which must be considered by the defendants in ruling on the validity of a nominating petition. Second, the state has backed up this limitation by imposing the sanction of removal from the ballot in the event of violation.[3] We have already found

---

3. We note, as did the district court, that the statute does not specifically require removal as a sanction for filing too many signatures. The

defendants take the position that Ill.Rev.Stat. ch. 46, § 7–13 and § 10–10, taken together, require this result. The only Illinois case to

a rational basis for the first action. In the abstract, no constitutional problem is presented by the state's choice to enforce strictly the technical requirements of the statute. *Cf. Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir. 1970). The precise question presented is whether the state may enforce the maximum limitation with the drastic sanction of removal from the ballot. We hold it may not, because the sanction of removal bears no rational relationship to the valid interest which the state asserts in imposing the maximum limitation. Put another way, the state has chosen to serve a legitimate end through irrational means.

In fact, the defendants have advanced no rational relationship between the means used (removal from the ballot) and the end sought (enforcement of a maximum signature limitation). The only argument offered is as follows:

"There is plainly a rational basis for removing a candidate for Ward Committeeman from the ballot for failure to comply with a constitutional provision of the Illinois Election Code. The purpose of the Code, and of the maximum signature limitation as to candidates for Ward Committeeman, is to provide for the integrity and orderly administration of the election process as to the office of Ward Committeeman. That office provokes an inordinately high number of challenges. That office is also the only one as to which there is an extremely narrow time limit for hearing challenges." (Brief, pp. 56–57).

This explanation involves a confusion of means with ends. The quoted language provides a rational basis for imposing a maximum signature limitation, and we have already accepted it as such. It provides no basis whatsoever for removing a candidate from the ballot if too many signatures are submitted.

Removing the candidate from the ballot is irrational for two reasons. First, removal has the effect of penalizing not only the candidate, but the voters who signed his petitions. We have already indicated that the voters' rights are not sufficiently implicated to trigger strict scrutiny. But the fact remains that this candidate has demonstrated more than the required significant modicum of support. If "rational relationship" analysis is to have any meaning at all, then the interests of these voters must be considered.

Second, there is an element of a "bootstrap" argument in the defendants' analysis of the supposed rational basis for removal from the ballot. We have recognized an administrative rationale for limiting the number of signatures which the Board must consider. The Board then argues that the five day time limit for hearing challenges makes removal rational. In effect, the state has chosen to magnify its own administrative burden and then use that burden to justify removing the candidate from the ballot. Removal, however, does not serve the administrative interests of the state except in the limited sense that the state need not consider the merits of a petition filed with too many signatures. This, however, is not rational. The rational way to deal with a petition filed with too many signatures is to find a way to avoid unnecessary administrative burdens without needlessly infringing other valid interests.

■ The district court suggested a number of rational ways in which the maximum limit could constitutionally be enforced.

"Assuming that limitations have an administrative justification, the same purpose can be served in a rational electoral system by returning the excess petitions, by refusing to consider any signatures beyond the statutory maximum or by concluding the objection hearing as soon as the minimum required signatures have been validated. This court is unable to conclude that the draconian sanction of removal from the ballot if surplus signa-

discuss the maximum signature limitation is *Lizak v. Zadrozny,* 4 Ill App.3d 1023, 283 N.E.2d 252 (1st Dist. 1972). The Court did not address the question of whether removal is

required by the provisions of the statute, but the approach used by the Court is at least consistent with the defendants' construction of state law.

tures are filed has any rational relationship to the state's interest in orderly election procedures."

In response to these suggestions, the defendants offer two observations. First, they say that the district court lapsed into strict scrutiny analysis by requiring the adoption of the least restrictive alternative. We agree that the least restrictive alternative doctrine has no place where strict scrutiny is not applied. *Cf. San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 51, 93 S.Ct. 1278, 1306, 36 L.Ed.2d 16 (1973). We do not agree that the district court's suggestions have been correctly characterized. The district court was simply listing a number of *rational* ways to enforce a maximum limit, by way of contrast with the chosen *irrational* method. The problem with the method chosen is not that it is more restrictive than other methods, but that it does not serve in any rational way the administrative efficiency interest which the state legitimately asserts in limiting the number of signatures which it will be required to consider.[4]

The second observation offered is simply that the legislature has chosen this method, and that the defendants have no authority to adopt a different method. This observation is of some interest to the defendants in determining how they will discharge their responsibilities. It is also constitutionally irrelevant. It cannot be seriously argued that a constitutionally irrational method of enforcement must be used simply because the legislature has chosen it. This turns constitutional analysis on its head. It is precisely because of the irrationality of the method that it *may* not be enforced. It is true that we should be cautious not to rewrite legislation. *Marshall v. United States*, 414 U.S. 417, 427, 94 S.Ct. 700, 706, 38 L.Ed.2d 618 (1974). It does not follow that we may not confine the state to action within constitutional limits. We have done so in a line of election cases.[5]

Having concluded that the district court properly found no rational relationship between the state's enforcement mechanism and the legitimate interest it was trying to serve, we conclude that the due process rights of the plaintiffs were violated. Therefore, the Clerk of this court is directed to enter judgment AFFIRMING the order of the district court.

---

4. This, of course, is the key distinction between this case, on one hand, and *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) and *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir. 1979), *cert. denied*, 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979), on the other. For example, in the latter case the "method of enforcement" (mandatory retirement) was rationally related to the legitimate interest which the state was entitled to assert (promoting a more vigorous judiciary). This also serves to distinguish the present case from cases involving minimum signature requirements. *E. g.*, *Bowe v. Board of Election Commissioners*, 614 F.2d 1147 (7th Cir. 1980), and cases cited. In minimum requirement cases, of course, a compelling state interest is required, but it is obvious that the removal sanction rationally serves the legitimate interest of the state in assuring that the candidate has demonstrated a significant modicum of support. If the minimum requirement itself is valid, then removal rationally serves the state's interest by preventing one who has not demonstrated sufficient support from gaining a place on the ballot.

5. *E. g.*, *Socialist Workers' Party v. Chicago Board of Election Commissioners*, 433 F.Supp. 11, 20 n.16 (N.D.Ill.), *aff'd in relevant part sub nom. Socialist Workers' Party v. Illinois State Board of Elections*, 566 F.2d 586 (7th Cir. 1977), *aff'd*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979) (reducing a signature requirement to the constitutional outer limit but refusing to rewrite the statute); *Sangmeister v. Woodard*, 565 F.2d 460, 467–68 (7th Cir.), *appeal dismissed*, 435 U.S. 939, 98 S.Ct. 1516, 55 L.Ed.2d 535 (1977) (requiring County Clerks to develop a constitutional method for determining ballot placement but refusing to mandate a particular system).