# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Wilson v. Municipal Officers Electoral Board, 2013 IL App (1st) 130957**

---

| | |
|---|---|
| Appellate Court Caption | BRIAN WILSON, Plaintiff-Appellant, v. THE MUNICIPAL OFFICERS ELECTORAL BOARD FOR THE CITY OF CALUMET CITY, Thaddeus Jones, Substitute Chairman, and Members, Magdalena J. Wosczynski and Nyota T. Figgs; NYOTA T. FIGGS in Her Capacity as City Clerk; DAVID ORR, in His Capacity as Cook County Clerk; and Objectors DEBORAH HAYNES-SHEGOG, STEVEN GRANT, and HOPE ALLEN, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0957 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | April 24, 2013<br><br>May 31, 2013<br>June 5, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant electoral board's decision that plaintiff's nomination papers for the office of mayor in a primary election were invalid was affirmed by the appellate court where the board did not err in refusing to consider signatures beyond the maximum number of signatures allowed under its rules, and when deductions were made from the maximum number of signatures for the signatures obtained by a person who circulated petitions for plaintiff as an independent candidate for mayor and as a Democratic candidate for alderman, in violation of a rule prohibiting a person from circulating petitions for candidates for more than one party or an independent candidate and a candidate from a political party, plaintiff lacked sufficient signatures to be allowed on the ballot. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 13-COEL-56, 13-COEL-57, 13-COEL-58; the Hon. Maureen Ward Kirby, Judge, presiding. |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Jawor Law Firm, of Bolingbrook (John J. Jawor, of counsel), for appellant. |
| | Odelson & Sterk, Ltd., of Evergreen Park (Burton S. Odelson and Matthew M. Welch, of counsel), and James P. Nally, PC, of Chicago (James P. Nally, of counsel), for appellees. |
| Panel | JUSTICE STERBA delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff-appellant Brian Wilson filed nomination papers for the office of mayor of Calumet City as a member of the Democratic party for the consolidated primary election scheduled to be held on February 26, 2013. After objections were filed to Wilson's candidacy, Wilson withdrew his candidacy. Wilson subsequently filed nomination papers for the same office as an independent candidate for the consolidated election to be held on April 9, 2013. Objections were again filed to Wilson's candidacy and, following a public hearing, the Municipal Officers Electoral Board for the City of Calumet City (Board) found that Wilson's nominating papers were invalid because he did not have the required minimum number of signatures and because section 7-43(f) of the Illinois Election Code (Code) (Pub. Act 97-681 (eff. Mar. 30, 2012) (amending 10 ILCS 5/7-43(f) (West 2010))) prohibits a candidate from running as a member of the Democratic party and as an independent candidate in the same election cycle. The circuit court affirmed the Board's findings. On appeal, Wilson contends that the circuit court erred in affirming the Board's findings because (1) the Board's rule relating to signatures submitted in excess of the maximum allowed is arbitrary and unconstitutional, (2) there is no prohibition against a voter signing a nominating petition for a party in the primary and then signing a petition for an independent candidate for the same office in the same election, (3) there is no prohibition against an individual circulating nominating petitions for a party candidate in a consolidated primary and then for an independent candidate in a consolidated election, and (4) the provisions of section 7-43(f)

do not apply to consolidated primaries and consolidated elections. On April 3, 2013, this court entered a brief order affirming the judgment of the circuit court. The order stated that an opinion or order of the court would follow at a later date. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 2                                      BACKGROUND

¶ 3        On November 19, 2012, Wilson filed nominating papers, including a statement of candidacy indicating his desire to have his name placed on the ballot as a Democratic candidate for the office of mayor of Calumet City for the February 26, 2013, consolidated primary election. Objections to Wilson's candidacy were filed, in part on the grounds that he did not pay real estate transfer taxes to Calumet City on certain real estate transactions. A hearing was scheduled for December 21, 2012; however, Wilson withdrew his candidacy. On December 26, 2012, Wilson filed another set of nominating papers, including a statement of candidacy indicating his desire to have his name placed on the ballot as an independent candidate for the office of mayor of Calumet City for the April 9, 2013, consolidated election. Objections to Wilson's candidacy were again filed by Deborah Haynes-Shegog, Steven Grant, and Hope Allen, on the grounds that Wilson did not have sufficient signatures, that candidates are prohibited from switching from an established political party to independent status in the same election cycle, and that Wilson owed Calumet City penalties and interest for the late payment of real estate transfer taxes.

¶ 4        The Board held public hearings on the petitions of all three objectors on January 14 and February 8, 12, and 18, 2013. Because the issues raised by objectors Haynes-Shegog and Grant were identical, the Board consolidated those petitions and issued a single written decision in response to those petitions on February 18, 2013. The Board also issued a written decision in response to the petition filed by Allen on February 18, 2013. However, the issue raised by Allen was also raised by Haynes-Shegog and Grant; therefore, the Board's decision on the Allen petition contains identical language and findings to the language on that issue in the Haynes-Shegog and Grant decision. Thus, for purposes of this appeal, we will provide the details of the Board's decision in response to the Haynes-Shegog and Grant petitions.

¶ 5        The Board noted that, pursuant to section 10-3 of the Code (10 ILCS 5/10-3 (West 2010)) and based on the number of ballots cast in the previous consolidated election, candidates for the April 9, 2013, consolidated election were required to submit a minimum of 257 signatures and must not file more than 410 signatures. The Board found that Wilson filed 522 signatures. The Board followed its rule for enforcing the maximum signature limit and invalidated all signatures in excess of the first 410. Because section 10-4 of the Code (10 ILCS 5/10-4 (West 2010)) prohibits a petition circulator from circulating petitions for an independent candidate in addition to a candidate for an established political party, the Board invalidated petition sheets that were circulated by Danny Williams, who also circulated petitions for a Democratic candidate, resulting in 56 invalid signatures. The Board accepted the results of the record examination by the Cook County clerk invalidating 112 signatures. The Board invalidated an additional 135 signatures of individuals who had previously signed petitions for partisan candidates, pursuant to section 10-3 of the Code (10 ILCS 5/10-3 (West

2010)), leaving Wilson with just 107 valid signatures.[1] Therefore, the Board found that Wilson did not have the minimum number of signatures required and his nomination papers were invalid in their entirety.

¶ 6        The Board then addressed the issue raised by all of the objectors, namely, that Wilson's candidacy violated section 7-43(f) of the Code (Pub. Act 97-681 (eff. Mar. 30, 2012) (amending 10 ILCS 5/7-43(f) (West 2010))). The Board found that section 7-43(f) was ambiguous and, therefore, considered the purpose of the law and its legislative history. Based on its review of the legislative history, the Board concluded that section 7-43(f) was intended to apply to all partisan election cycles, whether they be general election cycles (even years) or consolidated election cycles (odd years). The Board further concluded that Calumet City's election was a partisan election. Because Wilson filed partisan, Democratic nomination papers for the consolidated primary election and subsequently filed independent nomination papers for the consolidated election, the Board found that Wilson's nomination papers were invalid in their entirety.

¶ 7        Finally, the Board addressed the issue of whether Wilson was in arrears to Calumet City for delinquent real estate transfer taxes on three separate real estate title transfers at the time he filed his statement of candidacy. The Board disregarded Wilson's arguments that he did not actually owe the money and that Calumet City was improperly holding money he deposited on the basis that it lacked jurisdiction to consider those matters. The Board noted that Wilson signed real estate transfer declarations and paid transfer stamp fees for all three properties in question on December 26, 2012, and also tendered three separate checks in the amount of $741 each to Calumet City on that same day. The Board further noted that because Wilson testified that he had served both as deputy mayor and chairman of the finance committee, he would presumably have been aware of interest and penalty provisions related to late transfer tax payments. Thus, the Board concluded that Wilson was in arrears to Calumet City at the time he filed his statement of candidacy and his nomination papers were invalid in their entirety.

¶ 8        Wilson filed a petition for judicial review of the Board's decision in the circuit court of Cook County. On March 21, 2013, the circuit court affirmed the Board's decision on the issues of sufficiency of signatures and whether or not a candidate can change political affiliation during an election cycle under section 7-43(f), and reversed the Board's decision on the issue of whether or not Wilson was in arrears to the municipality at the time he filed his statement of candidacy. On March 26, 2013, Wilson filed a notice of appeal of the circuit court's March 21 decision. This court granted Wilson's motion to expedite the appeal and issued an order on April 3, 2013, affirming the circuit court and stating that an order or opinion would be filed at a later date. Our analysis in support of our April 3 order follows.

---

[1]The Board's decision states that the candidate had a total of 102 valid signatures. However, the Board noted in paragraph N of its decision that of 140 objections in a certain category that were sustained, the Board restored 5 of those signatures, bringing the total number of objections sustained to 135. When 135 is added to the previously held invalid 112 plus 56 signatures, and the invalid signatures (303 total) are subtracted from the maximum of 410 that were considered, the candidate is left with 107 valid signatures.

¶ 9                                     ANALYSIS

¶ 10        An electoral board is viewed as an administrative agency, and thus, the standard of review is determined by the type of question on review. *Hossfeld v. Illinois State Board of Elections*, 238 Ill. 2d 418, 423 (2010) (citing *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209-10 (2008)). An administrative agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct and will not be overturned unless they are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210. An agency's decision on a question of law is reviewed *de novo*. *Id*. An agency's determination on a mixed question of law and fact will not be disturbed on review unless it is clearly erroneous. *Id*. at 211. Moreover, where a circuit court reviews an electoral board's decision, we review the decision of the board, not the court. *Id*. at 212.

¶ 11        We turn first to the Board's finding that Wilson had an insufficient number of signatures to be placed on the ballot. The Board's ultimate finding is based on several different factors, and the Board argues that it involves mixed questions of law and fact and the applicable standard of review is whether the Board's finding was clearly erroneous. However, we agree with Wilson that each subpart of the Board's finding was based on a pure question of law, thus, our review is *de novo*.

¶ 12        Wilson first challenges the Board's rule that governs its handling of signatures submitted in excess of the maximum allowed. Section 10-3 of the Code provides that the number of signatures submitted by an independent candidate must be a minimum of 5% and a maximum of 8% of the number of persons who voted at the next preceding regular election in the district. 10 ILCS 5/10-3 (West 2010). The Board adopted a set of rules to govern the April 9 election, including a rule related to the minimum and maximum signature requirements found in section 10-3 of the Code. Municipal Officers Electoral Board for the City of Calumet City Rules for the April 9, 2013 Consolidated General Election, R.9 (adopted Jan. 14, 2013). The rule provides that signatures submitted in excess of the statutory maximum will not be considered. *Id*. The rule further explains that the computation of the maximum number of signatures will begin on sheet one, line one of the nomination petition and each consecutive line, exclusive of the deletions that have been removed pursuant to the Code with the corresponding appropriate certificate of deletion sheet, on each consecutive sheet will be counted until the maximum number of signatures allowed is reached. *Id*. The rule also expressly states that if the candidate does not have a sufficient number of signatures within the first 8% counted as set forth in the rule, no further names will be considered and the nomination petition will be found invalid. *Id*.

¶ 13        Wilson contends that the Board's rule is unconstitutional. In support of his position, Wilson cites to *Richards v. Lavelle*, 620 F.2d 144 (7th Cir. 1980), for the proposition that a refusal to stop counting signatures after the maximum has been reached is the equivalent of removing someone from the ballot simply because the candidate submitted more than the maximum number of signatures allowed. This argument has no merit. First, removing a candidate from the ballot as an automatic penalty for submitting signatures in excess of the number allowed is not the equivalent of removing a candidate from the ballot because, within

the maximum number of signatures allowed, he did not have the required minimum number of valid signatures. More importantly, the *Lavelle* court actually suggested the very remedy the Board chose to adopt and noted that it was a constitutionally acceptable way to address the maximum signature limitation.

¶ 14    The *Lavelle* court held that it was unconstitutional to enforce the maximum limitation requirement with the drastic sanction of automatic removal from the ballot. *Lavelle*, 620 F.2d at 148. The court agreed that imposing the limitation served a legitimate state interest. *Id*. at 147. However, the court stated that the remedy of removal from the ballot simply because the candidate submitted more than the maximum number of signatures was not rational. *Id*. at 148. The *Lavelle* court observed that the rational way to address the maximum signature requirement was to "find a way to avoid unnecessary administrative burdens without needlessly infringing other valid interests." *Id*. The court went on to note that the district court had "suggested a number of rational ways in which the maximum limit could constitutionally be enforced," including a refusal to consider any signatures beyond the statutory maximum. *Id*. In the case *sub judice*, the Board has chosen to adopt this very remedy. The Board's rule constitutes a rational means of enforcing the statutory maximum imposed. Therefore, the Board did not err in refusing to consider signatures after the maximum of 410 had been reached.

¶ 15    Wilson's remaining arguments related to whether he had the required number of signatures focus on whether the Board correctly interpreted two separate sections of the Code. Of the 410 signatures it considered, the Board invalidated 112 signatures by accepting the results of the Cook County clerk's findings. That finding is not challenged on appeal. Subtracting 112 from 410 leaves 298 signatures, or 41 signatures more than the minimum required. The Board invalidated 56 signatures pursuant to section 10-4 of the Code (10 ILCS 5/10-4 (West 2010)) and 135 signatures pursuant to section 10-3 of the Code (10 ILCS 5/10-3 (West 2010)). We note that affirming the Board on either one of these findings will result in an insufficient number of signatures.

¶ 16    Section 10-4 of the Code provides, in relevant part:

"[N]o person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election, or for such candidates and parties with respect to the same political subdivision at the next consolidated election." 10 ILCS 5/10-4 (West 2010).

¶ 17    It is undisputed that Danny Williams circulated nominating petitions for Ramonde Williams, a Democratic candidate for alderman in the consolidated primary election. Williams subsequently circulated petitions in support of Wilson's independent candidacy for mayor. The Board struck all petition sheets circulated by Williams pursuant to section 10-4 of the Code. Wilson argues that because section 10-4 does not specifically reference the consolidated primary, Williams was not prohibited from circulating petitions for a party candidate in the primary and an independent candidate in the consolidated election.

¶ 18    A basic rule of statutory interpretation is that, whenever possible, courts must construe statutes so that no part is rendered a nullity. *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d

92, 105 (2003). If we were to adopt Wilson's proposed interpretation of section 10-4, we would be rendering the prohibition on circulating petitions for both a party candidate and an independent candidate a nullity. Petitions for independent candidates are never circulated for primary elections, whether consolidated or general, because independent candidates do not run in primary elections. Conversely, petitions for party candidates are generally only circulated for primary elections, because after the primary election, the party candidate has been selected and no further petitions are circulated. The language of the statute clearly prohibits circulating a petition "for an independent candidate or candidates in addition to one political party." Moreover, the prohibition expressly applies to "candidates and parties with respect to the same political subdivision" in consolidated elections. The only possible interpretation that does not render this prohibition a nullity is to conclude that it applies to a given election cycle, whether it be a consolidated or a general election cycle. Thus, the Board correctly invalidated the 56 signatures contained on petitions circulated by Williams where he previously circulated petitions for a political party in the same election cycle.

¶ 19     Because this determination alone is sufficient to affirm the Board's finding that Wilson's nomination papers were invalid in their entirety, we decline to address Wilson's remaining arguments. We acknowledge that, as both parties point out, this court has not yet addressed the interpretation of the recent amendment to section 7-43(f) of the Code (Pub. Act 97-681 (eff. Mar. 30, 2012) (amending 10 ILCS 5/7-43(f) (West 2010)). However, "[e]stablished principles of judicial review counsel against consideration of issues which are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided." *In re Estate of Boyar*, 2013 IL 113655, ¶ 36. Moreover, because the appellate court's function is primarily one of error correction, it is sound policy to decide cases on the narrowest factual grounds available. *Id*. ¶ 53 (Burke, J., dissenting). In the case at bar, Wilson fell 15 signatures short of the minimum required, even without consideration of whether the Board correctly invalidated an additional 135 signatures pursuant to section 10-3 of the Code. Thus, our consideration of whether section 7-43(f) of the Code also prohibits a candidate from filing nominating papers as both a Democrat and an independent candidate in the same consolidated election cycle will not change the result and we decline to address this issue.

¶ 20     For the reasons stated herein, we hold that the circuit court did not err in affirming the Board's findings.

¶ 21     Affirmed.