2019 IL App (1st) 190190

THIRD DIVISION
February 22, 2019

No. 1-19-0190

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| KISHA McCASKILL, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Appeal from the |
| | ) | Circuit Court of |
| MUNICIPAL OFFICERS ELECTORAL BOARD FOR | ) | Cook County |
| THE CITY OF HARVEY, sitting as the duly constituted | ) | |
| Electoral Board to hear and pass upon objections to the | ) | |
| nomination papers of candidates for the office of 6th | ) | 19 COEL 4 |
| Ward Alderman of the City of Harvey for the 2019 | ) | |
| Consolidated Primary and General Elections, and its | ) | |
| members, ERIC KELLOGG, NANCY L. CLARK, and | ) | Honorable |
| DONALD NESBIT, the HONORABLE KAREN A. | ) | Carol Kipperman, |
| YARBROUGH, in her capacity as Cook County Clerk, | ) | Judge Presiding |
| and the Candidate TYRONE ROGERS, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| (Tyrone Rogers, Respondent-Appellant.) | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1    Tyrone Rogers filed petitions to appear as a candidate for the 6th Ward Alderman for the city of Harvey in the February 26, 2019 consolidated primary election. He first filed to be nominated at the Democratic Party primary. He later realized that Harvey doesn't hold partisan primaries; it holds a nonpartisan consolidated primary election. He thus filed a second set of

nominating petitions as a nonpartisan candidate and filed a document "withdrawing" his "candidacy" as a "Democrat."

¶ 2    Kisha McCaskill (the Objector) objected to Rogers's petitions on two grounds. First, she claimed that, by filing a second set of nominating petitions, Rogers had "withdraw[n], alter[ed], or add[ed] to" his first set, in violation of section 10-4 of the Election Code (10 ILCS 5/10-4 (West 2018)) and in contravention of this court's decision in *Stephens v. Education Officers Electoral Board*, 236 Ill. App. 3d 159 (1992).

¶ 3    Second, because Rogers circulated all of the petitions for his first set of nominating papers (when he was running as a "Democrat"), and he circulated all but two of the petitions for his second set, the Objector argued that Rogers violated section 10-4's prohibition on "dual circulation"—that is, circulating petitions for both a partisan candidate and an independent candidate in the same election cycle. See 10 ILCS 5/10-4 (West 2018).

¶ 4    The Municipal Officers Electoral Board for the City of Harvey (the Board) overruled these objections and allowed Rogers onto the ballot. The circuit court of Cook County reversed, finding violations of the Election Code on both grounds asserted by the Objector, and thus ordered that Rogers's name be removed from the ballot.

¶ 5    We stayed the trial court's judgment pending our expedited review. In the interim, the Cook County Clerk has informed us that, due to the low number of candidates running for the office of Sixth Ward Alderman for the city of Harvey, no primary election will be held for the office, and the candidates will run in the consolidated general election in April 2019. See 65 ILCS 5/3.1-20-45 (West 2018). We now reverse the trial court's judgment and order that Rogers's name appear on the ballot for Alderman, Sixth Ward, for the city of Harvey for the 2019 consolidated election.

¶ 6                                                   BACKGROUND

¶ 7     The facts are not in dispute. The City of Harvey holds nonpartisan consolidated elections, recently opting to hold a nonpartisan primary election as well as a general election. Among other races, the primary election for Alderman of the Sixth Ward for the city of Harvey is scheduled for February 26, 2019 (the February Primary).

¶ 8     On the first day of filing for the February Primary, Rogers filed nominating papers by which he sought nomination in the Democratic party primary for Sixth Ward Alderman. All the petition sheets (containing the signatures of registered voters supporting his candidacy) were circulated by Rogers himself.

¶ 9     As we noted above, no Democratic primary existed; Harvey does not hold partisan primaries for its local offices. Realizing his mistake, Rogers filed a second set of nominating papers for Sixth Ward Alderman, this time correctly designating himself as a nonpartisan candidate for the February Primary. He circulated all but two of the petitions attached to this set of nominating papers. At the same time he filed those nominating papers, he filed this document:

>  "I Tyrone Rogers *** am withdrawing my candidacy for Alderman as **Democratic** candidate for Alderman of the 6th ward for City of Harvey for the primary election on February 26, 2019."  (Emphasis in original.)

¶ 10    The Objector timely filed her objections to Rogers's nominating papers on two grounds. First, Rogers was prohibited from filing two petitions for the same office in the same election. Second, every petition sheet that Rogers himself circulated was invalid, because Rogers violated the rule on "dual circulation" in that he circulated petitions for both a partisan candidate and a nonpartisan candidate in the same election cycle. And once those invalid petitions were stricken, Rogers lacked sufficient signatures to qualify for the ballot.

¶ 11    The Board held a hearing and overruled the objections. The Objector then sought judicial review of the Board's decision. The circuit court reversed the Board's decision. The court found that section 10-4 of the Election Code "prohibits withdrawing and refiling nominating petitions; [Rogers] filed and then withdrew his first set of petitions and so his second set of petitions were void under *Stephens* [*v. Education Officers Electoral Board*, 236 Ill. App. 3d 159 (1992)]." The court also agreed that Rogers violated the dual-circulation prohibition. The court ordered the Clerk to remove Rogers's name from the ballot.

¶ 12    Rogers timely appealed. We expedited review under Illinois Supreme Court Rule 311(b) (eff. July 1, 2018) and ordered a stay of the trial court's judgment pending our disposition.

¶ 13                                          ANALYSIS

¶ 14    We review the decision of the Board, not the circuit court. *Siegel v. Lake County Electoral Board*, 385 Ill. App. 3d 452, 455 (2008). As pure questions of law are at issue, our review is *de novo*. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 15    Access to a place on the ballot is a substantial right that we will not lightly deny. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 32; *Bettis v. Marsaglia,* 2014 IL 117050, ¶ 28. We "tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997); *Guerrero v. Municipal Officers Electoral Board of Village of Franklin Park,* 2017 IL App (1st) 170486, ¶ 26 (quoting *Lucas*). Where reasonably possible, we thus construe election statutes in favor of ballot access, not denial. See *Wisnasky–Bettorf v. Pierce,* 2012 IL 111253, ¶ 22; *Sandefur v. Cunningham Township Officers Electoral Board*,

No. 1-19-0190

2013 IL App (4th) 130127, ¶ 21; *Carlasare v. Will County Officers Electoral Board*, 2012 IL App (3d) 120699, ¶ 19.

¶ 16                                                      I

¶ 17      The first argument that the Objector raised below and on appeal is that Rogers violated section 10-4 of the Election Code when he filed multiple nomination papers for the same office. See 10 ILCS 5/10-4 (West 2018). In a filing before this court, for the first time, the Objector now admits that this argument is legally incorrect. For the reasons we discuss below, we agree that this argument is no longer a valid one. We deem it necessary to explain our reasoning, first, because we are not bound by a party's concession, and second, because it is necessary to publish an opinion to clarify the law on this subject.

¶ 18      Section 10-4 of the Code provides that "[a] petition, when presented or filed, shall not be withdrawn, altered, or added to ***." *Id*. In *Stephens*, 236 Ill. App. 3d at 162, this court interpreted that language as "prohibit[ing] candidates from filing multiple sets of nomination papers for a single office."

¶ 19      *Stephens* concerned the November 1991 election for the board of trustees for a community college district. *Id*. at 159. The candidate filed two sets of nominating petitions for the office of trustee, one on the first day and the other at the end of the filing period. *Id*. at 160. The candidate objected to the second set of nomination papers, arguing that the candidate impermissibly "added to" his original papers, in violation of section 10-4. *Id*.

¶ 20      In response to the objection, the candidate withdrew his first set of nominating papers, hoping to validate the second set in doing so. *Id*. The electoral board overruled the objection and allowed the candidate on the ballot. *Id*. On judicial review, the circuit court upheld that ruling.

- 5 -

*Id*. The appellate court denied expedited review, and the November 1991 election was held with the candidate's name on the ballot. *Id*.

¶ 21      The appellate decision came down nearly a year later, in September 1992. The court reversed, holding that section 10-4's prohibition on "add[ing] to" nominating papers meant that the candidate was prohibited "from filing multiple sets of nomination papers for a single office." *Id*. at 162. The "candidate's filing of a second set of nomination papers *** constituted an attempt to add to the nomination papers previously filed, in violation of section 10-4," and the board "should have disregarded the second set of nomination papers as surplusage." *Id*. at 164.

¶ 22      Section 10-4 still contains the operative language today, providing that "[a] petition, when presented or filed, shall not be withdrawn, altered, or added to ***." 10 ILCS 5/10-4 (West 2018). The difference, however, is that the General Assembly amended section 10-6.2 of the Election Code in 1992 to allow for the filing of multiple sets of nominating papers. See P.A. 87-1052, Art. I, § 3 (eff. Sept. 11, 1992) (amending S.H.A. ch. 46, ¶ 10–6.2). Section 10-6.2, since then, has provided that "[i]f multiple sets of nomination papers are filed for a candidate to the same office," the candidate will be given the option to "cancel" the "prior set of petitions." 10 ILCS 5/10-6.2 (West 2018). If the candidate timely chooses that option, "the last set of petitions filed shall be the only petitions to be considered." *Id*. If, on the other hand, the candidate does not exercise that option in a timely manner, "only the first set of petitions shall be valid." *Id*.

¶ 23      Simply stated, section 10-6.2 provides that a candidate *may* file multiple sets of nominating papers. We must balance that language against the prohibition on "add[ing] to" petitions in section 10-4. 10 ILCS 5/10-4 (West 2018). We must try to harmonize them, giving effect to each one, if reasonably possible. *People v. McCarty*, 223 Ill. 2d 109, 133 (2006); *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441-42 (2005).

¶ 24    If we read section 10-4 as *Stephens* did—that is, as prohibiting the filing of multiple sets of nominating papers—we would not be giving any effect whatsoever to the contrary language in section 10-6.2. We would be judicially erasing this language from section 10-6.2, violating any number of canons of statutory construction in the process. A more specific statute on this topic, like section 10-6.2, controls over a more generally-worded statute like section 10-4. See *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 31. The operative language in section 10-6.2 was more recently enacted, too. See *id.*, ¶ 32 (more recent statutory enactment usually controls over earlier enactment, as well). We obviously cannot read the operative language in section 10-6.2 out of existence.

¶ 25    Fortunately, we can harmonize and give effect to each statute. There are many ways candidates might seek to "add[] to" their petitions in violation of section 10-4, besides filing an entirely new set of nominating papers. 10 ILCS 5/10-4 (West 2018). For example, a candidate might have omitted a required document from his filed nomination papers, like a statement of candidacy, and might try to add it later. Or the candidate might want to add more petition sheets to his filed nomination papers, fearing a lack of valid signatures. Section 10-4's language would still govern those situations, among others. We have not read that language out of existence.

¶ 26    But insofar as a candidate submits a full second set of nomination papers for the same office, section 10-6.2's more specific language controls. It permits the multiple filings and prescribes a procedure whereby the candidate may choose one set of the petitions over the other, and a default mechanism should the candidate not act.

¶ 27    This amendment to section 10-6.2 took effect in September 1992, so it did not govern the 1991 election cycle at issue in *Stephens*, and thus the court there had no occasion to consider it. We cannot fault the court in *Stephens* for its interpretation or reasoning. But this much we can

say with certainty: the holding in *Stephens*, 236 Ill. App. 3d at 162, that "section 10–4 prohibits candidates from filing multiple sets of nomination papers for a single office," is no longer good law and should not be followed. That holding has been superseded by section 10-6.2.

¶ 28    Rogers cites to yet *another* provision in Article 10 of the Election Code that envisions the multiple filing of nominating papers, albeit in a different and more limited context. That language is found in section 10-7. See 10 ILCS 5/10-7 (West 2018). The relevant language provides that, if a candidate submits more than one set of nominating papers, then the election authority shall notify that candidate that he or she must "elect as to which of said political party appellations or groups he desires his name to appear and remain under," and if the candidate fails to make that election, then the nominating papers "first filed" shall be the only valid ones. *Id.*

¶ 29    That portion of section 10-7 is not applicable here. That provision clearly envisions a *partisan* primary, the only one where candidates file under various "political party appellations or groups." Section 10-7 even mandates that the election authority notify the candidate that filing under two different political parties for the same office in the same election cycle is "unlawful[]"(*id.*), which of course it is. See 10 ILCS 5/10-2 (West 2018) (candidate for partisan primary election is "ineligible" to run as candidate for new political party in same election cycle); *id.*, § 10-3 (candidate for partisan primary election is "ineligible" to run as independent in same election cycle); *id.*, § 7-43 (candidate for nomination in established-party primary may not run in another established-party primary or as independent in same election cycle). Section 10-7 simply gives the candidate the opportunity to correct the mistake and comply with the law by running under the banner of only one political party at a time.

¶ 30    We are concerned here, in contrast, with a nonpartisan election. The language in section 10-7 discussed above does not apply to nonpartisan elections. Section 10-6.2's language on multiple filings applies to both partisan and nonpartisan elections and thus applies here.

¶ 31    As noted earlier, after arguing before the Board and the trial court that section 10-4 prohibited the filing of multiple sets of nominating papers, per *Stephens*, the Objector corrected that position before this court and conceded the application of section 10-6.2. We have chosen to give a full review to the issue, regardless, because it was necessary to correct any misimpression that *Stephens* was still controlling law on this point. It is not.

¶ 32    Because the original objection before the Board was based on section 10-4 and never mentioned section 10-6.2, and because we find section 10-4 inapplicable, we need not proceed further to determine whether Rogers complied with section 10-6.2's requirement that he notify the election authority of his intent to "cancel" his first set of (incorrectly partisan) nominating papers in favor of his (correctly nonpartisan) second set. 10 ILCS 5/10-6.2 (West 2018). Rogers's compliance with section 10-6.2 has never been the basis of an objection, and we will not create an objection never raised in the objector's petition before the Board. See *Wiesner v. Brennan*, 2016 IL App (2d) 160115, ¶ 17 (all objections to nominating papers must be contained within objector's petition; no new objections may be raised or considered thereafter); *Weber v. Winnebago County Officers Electoral Board*, 2012 IL App (2d) 120051, ¶ 13 (same).

¶ 33    The Board thus correctly overruled this objection. The trial court erred in reversing the Board's decision and disqualifying Rogers on this ground.

¶ 34                                            II

¶ 35    We next consider the Objector's claim, with which the trial court also agreed, that when Rogers circulated petitions for his candidacy both as a partisan Democrat and as a nonpartisan

candidate, he violated the "dual circulation" prohibition of section 10-4 of the Election Code. That provision reads:

> "[N]o person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election, or for such candidates and parties with respect to the same political subdivision at the next consolidated election." 10 ILCS 5/10-4 (West 2018).

¶ 36     The election at issue here is Harvey's "consolidated" election—elections held on odd-numbered years. See 10 ILCS 5/2A-1.1(b) (West 2018). And the "political subdivision" referenced above, in this case, would be a municipality—specifically a city. See 10 ILCS 5/1-3(7) (West 2018) (defining "political subdivision" as "unit of local government"); Ill. Const. 1970, Art. VII, § 1 (cities are "units of local government"). Most elections for municipal offices, such as mayor and alderman, or village president and village trustee, take place in consolidated elections. See 10 ILCS 5/2A-1.2(c) (West 2018).

¶ 37     Municipalities may hold either partisan or nonpartisan consolidated elections for its officers. See *id*., §§ 1.2(c), (d). Some are forced into a choice by law; some may opt into a different form by referendum. See, *e.g.*, 10 ILCS 5/10-1(c), (d) (West 2018); 65 ILCS 5/3.1-20-45 (West 2018); 65 ILCS 5/3.1-25-20 (West 2018); 5 ILCS 5/3.1-25-65 (West 2018).

¶ 38     When partisan consolidated elections are held, candidates may run under the banner of an "established" political party or a "new" political party. See 10 ILCS 5/10-2 (West 2018). Or, if desiring not to be affiliated with a political party, candidates may run as "independents." See *id.*, § 10-3. With the exception of write-in candidacies, those are the only choices for a candidate in a

partisan consolidated election: pick a party affiliation or run as an independent. See *Rudd v. Lake County Electoral Board*, 2016 IL App (2d) 160649, ¶ 3.

¶ 39    In the context of partisan consolidated elections, then, the dual-circulator prohibition in section 10-4 is easy to apply. An individual may not circulate petitions for candidates of two different political parties, or for a partisan candidate and an independent, for city offices to be voted on within the same election cycle. 10 ILCS 5/10-4 (West 2018). So, for example, we have held that the same individual could not circulate petitions both for a Democratic Party candidate for alderman in Calumet City and for an independent candidate for mayor of Calumet City in the same consolidated election cycle. *Wilson v. Municipal Officers Electoral Board for City of Calumet City*, 2013 IL App (1st) 130957, ¶¶ 17-18.

¶ 40    Courts have justified the dual-circulation prohibition in partisan elections on two grounds. One is preventing political gamesmanship, whereby a political party, via its circulator, either (1) tries to nominate an independent candidate whom it believes will siphon votes from a candidate of an opposing political party or (2) tries to "raid" the other party's primary by nominating a partisan opponent who will be easier to defeat in the general election. See *Citizens for John W. Moore Party v. Board of Election Commissioners,* 794 F.2d 1254, 1260-61 (7th Cir. 1986). The other justification is avoiding the possibility of voter "confusion" when "a circulator identified as the agent of one party suddenly solicits signatures for another party or an independent candidate" in the same election cycle. See *id*.

¶ 41    All of that makes sense in the context of partisan elections. The plain language of the dual-circulator prohibition governs partisan races via its reference to "political part[ies]" and "independent" candidates. 10 ILCS 5/10-4 (West 2018). And one of its purposes is to stop

shenanigans by those very political parties, either by raiding the other party's partisan primary or nominating a "spoiler" independent candidate for the general election.

¶ 42　But the city of Harvey doesn't hold partisan elections; it holds nonpartisan consolidated elections (and has done so, we are told, for over a century). And the dual-circulation prohibition in section 10-4 makes absolutely no sense in the context of nonpartisan elections. Consider its language again, in pertinent part:

> "[N]o person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon *** with respect to the same political subdivision at the next consolidated election." 10 ILCS 5/10-4 (West 2018).

¶ 43　There are no partisan candidates "voted upon" at *any* consolidated election for city offices within Harvey. There is no candidate of any political party, much less an "independent" candidate, with respect to offices within the "political subdivision" of the city of Harvey, one of which is the one Rogers seeks, the office of Alderman, Sixth Ward. As a purely literal matter, the plain language of the dual-circulator prohibition does not apply to nonpartisan elections.

¶ 44　Nor would the dual-circulator prohibition's purpose of thwarting political gamesmanship by served by applying it to nonpartisan elections. Party affiliation is barred by law in nonpartisan elections. See, *e.g.*, 10 ILCS 5/2A-1.2(c)(1), (d) (West 2018) (referring to candidates in nonpartisan municipal elections as those that "are not permitted by law to be candidates of political parties."). No political party could "raid" the opposing party's primary; nonpartisans all run in the *same* primary for a particular office. And no "independent" candidates run in nonpartisan elections, so the concept of a "spoiler" in the general election is legally inapplicable.

¶ 45    Simply stated, the dual-circulation prohibition in section 10-4 does not apply to nonpartisan elections.

¶ 46    The Objector makes several attempts to superimpose this partisan election prohibition onto a nonpartisan election. First, she relies on section 10-3.1 of the Election Code:

> "The provisions of this Article 10 relating to independent candidate petition requirements shall apply to nonpartisan petitions to the extent they are not inconsistent with the requirements of such other statutes or ordinances." 10 ILCS 5/10-3.1 (West 2018).

¶ 47    The Objector says that the dual-circulator prohibition is an "independent candidate petition requirement" under section 3.1, and thus that requirement likewise "shall apply to nonpartisan petitions" by virtue of section 3.1. *Id.* It may be true that the dual-circulator prohibition qualifies as a "petition requirement." But even if it did, by its plain terms, section 3.1 only bootstraps an independent candidate's petition requirement onto that of a nonpartisan candidate if doing so is "not inconsistent with the requirements of such other statutes or ordinances." *Id.*

¶ 48    As we explained above, because the Election Code does not permit a partisan candidate or an independent candidate to run in a nonpartisan consolidated election, applying the dual-circulation prohibition to a nonpartisan consolidated election would not only be "inconsistent" with the Election Code provisions governing nonpartisan races—it would be absurd.

¶ 49    Second, the Objector correctly notes the similarities between "independent" and "nonpartisan" candidates (most obviously the lack of party affiliation) in suggesting that it would be fair to substitute in a nonpartisan candidate for an independent one in section 10-4's dual-circulator prohibition. And yes, as to many petition requirements, it makes sense to hold independent and nonpartisan candidates to the same standard.

¶ 50    Still, these designations are terms of art in the Election Code that cannot be interchanged. Independent candidates run in partisan elections and do not have to run in primaries; they are "nominated" for the general election not by defeating primary opponents but by filing valid nominating papers with sufficient signatures of registered voters, usually a much higher signature requirement than partisan primary candidates must meet. See *Wilson*, 2013 IL App (1st) 130957, ¶ 18; 10 ILCS 5/10-3 (West 2018).

¶ 51    Nonpartisan candidates, as we have noted, run in elections where party affiliation is barred by law, either under the Election Code or the Municipal Code. See, *e.g.*, 10 ILCS 5/2A-1.2(c)(1), (d) (West 2018); *id.*, § 10-3.1 (petition requirements for nonpartisan candidates). And they run in primaries, unless the municipality opts not to hold primaries, or a low enough number of candidates are running for a particular office that the candidates are moved straight to the general election. See, *e.g.*, 10 ILCS 5/2A-1.1(b) (West 2018); 65 ILCS 5/3.1-20-45 (West 2018).

¶ 52    So while independent candidates and nonpartisan candidates share many of the same attributes, they are unquestionably different species, running in different elections on different terms. And while they understandably share many of the same requirements for access to the ballot, the dual-circulator prohibition is not one of them. By its literal terms, the dual-circulation prohibition in section 10-4 does not apply to nonpartisan consolidated elections. In practical application, it could not.

¶ 53    Third and finally, the Objector urges us to focus on the other stated justification for the dual-circulator prohibition—to avoid voter confusion when a circulator shows up at a voter's door, first with petitions for a candidate of one political party, and then returns with a petition for another party's candidate or an independent candidate. See *Citizens for John W. Moore Party,* 794 F.2d at 1260-61. The Objector says that voters would be just as confused if (as here) the

same individual first circulated petitions for a political-party candidate and then later presented a *nonpartisan* candidate's petition.

¶ 54 We don't deny that some voter confusion could result in this instance, as well. Voters may have wondered why Rogers knocked on their door first as a candidate for the Democratic Party primary for Sixth Ward Alderman and then later as a nonpartisan candidate for that same office. So while the purpose of avoiding political gamesmanship would not be served by applying the dual-circulator provision to nonpartisan elections, the justification of avoiding voter confusion might. In that limited sense, and only in that limited sense, applying the dual-circulator prohibition to nonpartisan elections might be consistent with the spirit of that prohibition.

¶ 55 But it is wholly inconsistent with the *letter* of that provision, and that's what counts. Nothing in the language of the dual-circulator prohibition hints at its application to nonpartisan elections; the plain language admits of only the opposite conclusion. We reiterate that, because of the importance of ballot access and the right to vote, we make every reasonable attempt to interpret election statutes to promote ballot access. *Jackson-Hicks*, 2015 IL 118929, ¶ 32; *Bettis,* 2014 IL 117050, ¶ 28; *Wisnasky–Bettorf v. Pierce,* 2012 IL 111253, ¶ 22. And that's when we're interpreting statutes that *apply* to a candidate; disqualifying Rogers from the ballot based on a statute that *doesn't even govern his election*, simply because the scenario envisioned in that statute bears some similarity to his actions here, would turn these bedrock legal principles on their head.

¶ 56 Rogers did not help himself by his conduct here. He circulated petitions for a partisan primary that didn't exist. But he corrected the mistake by recirculating petitions for his nonpartisan candidacy. No provision of the Election Code prevented him from circulating that second set of petitions for this nonpartisan election. We will not invent one. Nor will we

judicially re-write an existing provision that does not apply to his election. The General Assembly, as always, is free to speak on this matter.

¶ 57    The Board properly overruled this objection. The circuit court erred in reversing that decision.

¶ 58                                    CONCLUSION

¶ 59    The judgment of the circuit court is reversed. We order the Cook County Clerk to include Rogers's name on the ballot for Alderman, Sixth Ward, for the city of Harvey in the relevant 2019 consolidated election, be it the primary election if one is held or the general election otherwise.

¶ 60    The mandate shall issue immediately.

¶ 61    Reversed.